424 So.2d 226 (1982)
STATE of Louisiana
v.
Roland ROUSSEL, Jr.
No. 82-KA-0630.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 21, 1983.
*227 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry J. Morel, Jr., Dist. Atty., Harry R. Morgan, Kurt Sins, Abbott J. Reeves, Asst. Dist. Attys., for plaintiff-appellee.
Julian R. Murray, Jr., Harry Morgan Murray, Murray, Ellis, Braden & Landry, New Orleans, for defendant-appellant.
MARCUS, Justice.
Roland Roussel, Jr. was indicted by the grand jury for first degree murder. Prior to trial, the indictment was amended to second degree murder (La.R.S. 14: 30.1). After trial by jury, defendant was found guilty of manslaughter and sentenced to serve twenty-one years at hard labor plus an additional term of two years imprisonment without benefit of parole, probation, suspension of sentence or credit for good time for the use of a firearm at the time of the crime. La.R.S. 14:95.2. On appeal, defendant relies on four assignments of error for reversal of his conviction and sentence.

FACTS
The record reveals that Roland Roussel, age 21, fatally shot his wife, Dara Ann Roussel. Although they had been married only four months, they had separated on several occasions due to Dara Ann's alleged use of drugs which was contrary to Roland's beliefs as a Jehovah's Witness. Prior to the shooting, they had again separated. Testimony indicated that Dara Ann had been having an affair with another man. Dara *228 Ann had spent several nights prior to the shooting at the trailer of her grandparents (the Oubres).
On the day of the shooting, Dara Ann picked up defendant at his place of employment. They returned to the trailer to get her belongings before returning home. While Dara Ann was packing, defendant left to purchase some beer at a nearby convenience store. Upon returning, Dara Ann's behavior had dramatically changed to that consistent with her behavior when on drugs. She was extremely upset about losing her purse. Defendant called her cousin, Leatrice Mitchell, to come to the trailer which she did. David Mitchell followed his wife a short while later. According to his testimony, Dara Ann was visibly upset. Defendant was in possession of a .22 caliber revolver which he carried for protection in connection with his employment. Defendant removed the gun from his pants and placed it in the right pocket of his jacket. Defendant testified that David Mitchell was carrying a shotgun. Mitchell's wife made him put the shotgun in the trunk of their car. At that point, Mr. Oubre arrived. According to his testimony, Dara Ann stated that Roland was going to kill her. Mr. Oubre told defendant to leave if he had a gun and then left to pick up his wife.
Mrs. Oubre testified that she questioned defendant about the gun when she arrived. Upon denying he had one, she suggested it would be better if he left. Defendant agreed to go but did not leave immediately because he wanted to explain to Mrs. Oubre that what Dara Ann was saying about him was not true. Several witnesses testified that defendant stated Dara Ann had too many people involved in her business. According to David Mitchell, defendant also said, "Now you have done it." Then the phone rang; it was Dara Ann's mother. Dara Ann told her that defendant was going to kill her; Mrs. Oubre took the phone. Defendant asked to talk with Dara Ann's mother. Mrs. Oubre passed him the phone but Dara Ann's mother had hung up, whereupon defendant commented, "That's the best thing you could have done."
Defendant testified that he was very nervous and upset at this point and had decided to leave. The "noise and hostility" from his wife's family had him crying and his hands were bunched in his pockets, his right hand wrapped around the outside of his pistol, squeezing it very tightly. He remembered walking toward Dara Ann and her grandmother (Mrs. Oubre) who were standing near the table where his belongings were located and hearing a shot fired, but did not know how it was fired, by whom, or that anyone was hit. The next thing he remembered he was on the floor being strangled by David Mitchell. He recalled that his gun was still in his pocket because he was trying to get it out to protect himself. Mitchell testified that after the first shot, defendant turned and tried to shoot him saying, "You're next...." The gun jammed; defendant then took it out of his pocket and aimed it at Mitchell who tackled him and held him down until Mr. Oubre took the gun out of defendant's hand. Mitchell held defendant down until the police arrived shortly thereafter. When they arrived, defendant was taken to the patrol car and informed of the charges against him and his Miranda rights. The arresting officer testified that defendant did not seem to be aware that he had shot his wife. Ballistics experts found that defendant's gun could have been accidentally discharged by fingers curled around the outside of the trigger housing. They also confirmed Mitchell's testimony that the gun had jammed.

ASSIGNMENT OF ERROR NO. 1
Defendant contends the trial judge erred in refusing to allow expert testimony relative to the genuineness of his purported amnesia. He argues that the testimony was offered solely to corroborate the credibility of his testimony as to his inability to remember the moment of shooting.
Defendant was initially indicted for first degree murder to which he entered a plea of "not guilty and not guilty by reason of insanity." A sanity commission was appointed to evaluate his mental capacity to *229 proceed and his mental condition at the time of the offense. Defendant stated that the sole reason for his insanity plea was his amnesia as to the moment of shooting. Two of the three psychiatrists on the sanity commission found defendant had repressive amnesia, limited to the moment of shooting. The third psychiatrist considered defendant's "patchy" memory to be a sign that his purported amnesia was not genuine. All reported that defendant had the mental capacity to proceed and was capable of distinguishing right from wrong at the time of the offense. Because there was a possibility that defendant's memory would return within six months, or under hypnosis or drugs, the court held its decision open until such measures could be taken. Dr. Scrignar, the member of the sanity commission who administered the hypnosis and drugs, found that defendant had no recollection of any intent to shoot anyone and could not remember the moment of shooting, although his memory of the events immediately before and after the shooting improved. After the hearing, the trial judge ruled that defendant had the mental capacity to proceed.[1]
On the day of trial, the indictment was amended from first degree murder to second degree murder. Defendant withdrew his former plea of "not guilty and not guilty by reason of insanity" and entered a plea of "not guilty." After the close of the state's evidence, defendant took the stand in his own behalf. During direct examination, he was questioned as to his state of mind at the time of the offense. The state objected to any testimony, either from this witness or Dr. Scrignar (one of the psychiatrists on the sanity commission whom defendant intended to call as a witness), relative to a mental defect at the time of the offense. The state argued that in the absence of a special plea of insanity, evidence of a mental defect (amnesia in this case) was not admissible, either as a complete defense or for the purpose of negating a specific intent and reducing the degree of the crime. Defendant responded by asserting that he was not trying to show "reduced capacity or mental incapacity of any way, shape, or form" but rather only sought to introduce the evidence on the issue of credibility and agreed to a limiting instruction to that effect. The trial judge ruled that while defendant could testify as to his state of mind at the time of the shooting including his inability to remember the moment of shooting, neither he nor the psychiatrist could testify relative to the issue of amnesia.
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(1). La.Code Crim.P. art. 651 provides:
When a defendant is tried upon a plea of "not guilty", evidence of insanity or mental defect at the time of the offense shall not be admissible.
The defenses available under a combined plea of "not guilty and not guilty by reason of insanity" shall be tried together.
In State v. James, 241 La. 233, 128 So.2d 21 (1961), we stated that "[t]here can be no question that amnesia is a mental defect." In James, defendant testified that he had a loss of memory (amnesia) during the commission of the murder for which he was charged. Subsequently, the trial judge sustained the state's objection to the testimony of a psychiatrist relative to "mental defect, mental condition, or loss of memory" of the accused. In affirming the ruling of the trial court, we held that in the absence of a special plea of insanity, evidence of a mental defect at the time of the crime was not admissible. In State v. LeCompte, 371 So.2d 239 (La.1978), we held that under art. 651, evidence of a mental condition or defect is inadmissible when the defendant failed to plead not guilty and not guilty by reason of insanity. Moreover, a mental defect or disorder short of insanity cannot *230 serve to negate specific intent and reduce the degree of the crime. On rehearing, in affirming our holding on this issue, we stated:
[B]y offering evidence of mental illness as vitiating intent as an essential element of the crime, the defendant attempts to come through the back door to prove lack of mental responsibility to commit the offense charged. The real danger in permitting psychiatric evidence of mental or emotional disorders short of insanity to negate intent is to practically destroy the M'Naughten rule and to clutter practically every trial with some sort of expert opinion evidence as to whether the defendant possessed the requisite intent to commit the crime charged.
In the instant case, we consider that the trial judge correctly refused to allow expert testimony relative to defendant's amnesia. La.Code Crim.P. art. 651 clearly provides that when a defendant is tried upon a plea of "not guilty," as here, evidence of insanity or mental defect at the time of the offense shall not be admissible. As previously noted, we have held that evidence of amnesia is a mental defect. James, supra. However, art. 651 deals with a mental defect "at the time of the offense." Therefore, the question remains whether defendant's mental defect (amnesia) occurred at the time of the offense. Defendant recalled in detail the events immediately before and after the shooting. The only thing he did not recall was the shooting itself. Moreover, he could not remember the shooting immediately after it occurred when questioned by the arresting officer. Therefore, it is reasonable to infer from these facts that defendant's amnesia as to the shooting began at the time of the offense. Although defendant argues that psychiatric testimony was intended solely to corroborate the credibility of his testimony as to his inability to remember the moment of shooting, we consider that the admission of such evidence would be accepted either as a complete defense or for the purpose of negating specific intent and reducing the degree of the crime despite a limiting instruction to the contrary. In sum, we consider defendant's amnesia to be a mental defect that existed at the time of the offense and evidence thereof was properly excluded in the absence of an insanity plea. Hence, the trial judge correctly refused to allow expert testimony relative to defendant's amnesia.
Assignment of Error No. 1 is without merit.

ASSIGNMENT OF ERROR NO. 2
Defendant contends the trial judge erred in admitting a hearsay statement of a witness in evidence.
On cross-examination, David Mitchell testified that defendant had stated, "Now you have done it" after the phone call from Dara Ann's mother. The witness' attention was then directed to a statement made by him to the police on the night of the shooting in which he had related that the comment was made by defendant before the phone call. Defendant asked the witness: "You didn't change the facts around and make it sound a little worse for Mr. Roussel?" The witness acknowledged that his statement to the police was the correct one, that is, the comment was made by defendant before the phone call. On redirect, the state showed the witness the statement previously shown to him by defendant during cross-examination. Upon questioning the witness relative to the statement, defendant objected on the ground of hearsay, whereupon, the state offered the entire statement in evidence. The statement was admitted in evidence over defendant's objection.
La.R.S. 15:281 provides that redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination. La.R.S. 15:496 provides that "when the testimony of a witness has been assailed as to a particular fact stated by him, similar prior statements, made at an unsuspicious time, may be received to corroborate his testimony." La.R.S. 15:497 provides that such testimony is only admissible when charged to have been given under *231 the influence of "some improper or interested motive, or to be of a recent fabrication." The trial judge is often called upon to exercise discretion when part of a transaction, conversation or writing has been proved by the adversary and the re-examiner seeks proof of the remainder. The "rule of completeness" permits the judge to admit proof of the remainder so far as it relates to the same subject matter. C. McCormick Handbook of the Law of Evidence § 32, at 61 (1954).
In the instant case, defendant assailed Mitchell's testimony relative to when the comment was made by defendant and inquired of him whether he had an improper motive for testifying differently from his statement to the police. Mitchell acknowledged that his prior statement was the correct one, making his trial testimony as to when the comment in question was made consistent with his previous statement. Moreover, the entire statement consisted of only a short paragraph and related to the events immediately before and after the shooting. The comment made by defendant was included and related to the facts recited in the statement. Under the circumstances, we are unable to say that the trial judge abused his discretion in admitting the entire statement in evidence for the purposes of corroboration and completeness. In any event, even if the statement was improperly received in evidence, defendant suffered no prejudice as Mitchell's testimony covered all facts included in the statement.
Assignment of Error No. 2 is without merit.

ASSIGNMENT OF ERROR NO. 3
Defendant contends the trial judge erred in imposing an excessive sentence.
La. Const. art. 1, § 20 prohibits by law the imposition of excessive punishment. We have held that, even though it is within the statutory limits, a sentence may violate a defendant's right against excessive punishment under the particular circumstances of the case. State v. Sepulvado, 367 So.2d 762 (La.1979). To determine if a given penalty is excessive we must find that, in light of the harm caused to society, the penalty is so grossly disproportionate to the crime as to shock our sense of justice. State v. Bonano, 384 So.2d 355 (La.1980); State v. Beavers, 382 So.2d 943 (La.1980); State v. Goode, 380 So.2d 1361 (La.1980).
The pre-sentence report reveals that defendant, age 21, was reared in a very religious home as a Jehovah's Witness. He had no juvenile or adult record. He was employed at a telephone rental company for the past three years since his graduation from high school. Although only "positive references" were made by community contacts, the report recommended that defendant's sentence be stringent enough to deter the occurrence of a similar act yet lenient enough so as not to adversely affect him.
The trial judge, after complying with the sentencing guidelines (La.Code Crim.P. art. 894.1), concluded that a sentence of imprisonment should be imposed. He did not find that defendant acted under strong provocation, and, in his opinion, defendant should have anticipated the danger that could result from fooling around with a gun. Furthermore, he could not conclude that defendant's conduct was unlikely to recur or that probation was likely to be effective. The trial judge noted that while the jury found defendant guilty of manslaughter, the facts indicated that defendant should have been found guilty of second degree murder. For these reasons, the trial judge imposed the maximum sentence of imprisonment (twenty-one years). Any lesser sentence would, in his determination, have deprecated the seriousness of the crime.
We are unable to say that the trial judge abused his discretion by imposing the maximum sentence in this case. The taking of Dara Ann's life was senseless. Neither their personal problems nor the events immediately preceding the shooting constituted sufficient provocation for such conduct. Although the jury found defendant guilty of manslaughter, the trial judge considered that the evidence supported a verdict for second degree murder. In addition, defendant *232 attempted to take the life of David Mitchell and but for the jamming of the gun, he might have taken the life of another person. Under the circumstances, despite defendant's youth, good work history and lack of a prior record, we do not consider that the penalty imposed was so grossly disproportionate to the crime as to shock our sense of justice. Hence, we do not find the sentence excessive.
Assignment of Error No. 3 is without merit.

ASSIGNMENT OF ERROR NO. 4
Defendant contends the trial judge erred in imposing an additional term of two years imprisonment for the use of a firearm at the time of the crime under La.R.S. 14:95.2 without having been charged under this statute. As a result, he argues that he was denied notice and an opportunity to defend against it.
La.R.S. 14:95.2 is an article in the Criminal Code and provides for additional penalties for possession of a firearm or explosive device in the commission of certain enumerated crimes. The statute does not create a separate crime. Rather, it mandates that an additional penalty be imposed when a person uses a firearm or emplosive device at the time he commits certain crimes. It is based on the proof of that fact during trial. Defendant was charged with second degree murder and convicted of manslaughter. Both crimes are listed in La.R.S. 14:95.2. The evidence fully supports that a firearm (.22 caliber gun) was used in the commission of the crime for which defendant was convicted (manslaughter). The additional penalty was imposed at the sentencing hearing.
Accordingly, we find no substance to defendant's contention that one must be separately charged under La.R.S. 14:95.2. Adequate notice and opportunity to defend against it are afforded to the accused.
Assignment of Error No. 4 is without merit.

DECREE
For the reasons assigned, defendant's conviction and sentence are affirmed.
LEMMON, J., concurs, believing that any error in excluding psychiatric testimony was harmless in view of the overwhelming evidence of an intentional killing.
DIXON, C.J., dissents.
CALOGERO, J., dissents and assigns reasons.
DENNIS, J., dissents with reasons.
CALOGERO, Justice, dissenting.
I dissent from the majority opinion being of the view that evidence of amnesia is not "evidence of insanity or mental defect at the time of the offense" such that its admissibility is prohibited by La.C.Cr.P. art. 651.
Even if we assume, for purposes of argument, that amnesia is a "mental defect" it is not one that exists "at the time of the offense." Amnesia, by its very nature and definition, is the present inability to remember events of the past. It is a condition that occurs after the event, not before it or even simultaneously with it, having nothing to do with one's mental state at the time of the event.
This case is distinguishable from State v. Lecompte, 371 So.2d 239 (La.1979), and it's progeny, State v. Wade, 375 So.2d 97 (La. 1979) and State v. Leatherwood, 411 So.2d 29 (La.1982). In all three of these cases, the defendant sought to introduce testimony to the effect that he was unable to form the specific intent required for the charged crimes. In the present case, defendant does not seek to introduce evidence concerning his mental state prior to or at the time of the commission of the crime, but rather, he seeks to show that he cannot now remember those events.
Defendant, who pled simply not guilty, testified on his own behalf at trial. He related the events of the evening up to a point just before the gun went off; he then stated that he could not remember anything about the moments just before and just after the gun discharged. To support that *233 testimony, defendant wanted to have one of the examining psychiatrists testify that it was the psychiatrist's opinion that the defendant was genuinely suffering from amnesia. The state, at that point, could have presented contrary testimony by the other examining psychiatrist. Utilization of this procedure would have left the factual and credibility determinations with the jury, where they belong, and would have been, in my view, the proper procedure.
For the foregoing reasons, I believe the trial court erred in excluding the testimony of the psychiatrist concerning defendant's amnesia. I therefore dissent from the majority opinion.
DENNIS, Justice, dissenting.
I respectfully dissent for the reasons assigned by Mr. Justice Calogero.
NOTES
[1] We note that State v. Jones, 376 So.2d 125 (La.1979), and State v. Veal, 326 So.2d 329 (La.1976), support this conclusion.