470 So.2d 549 (1985)
STATE of Louisiana
v.
Jerry COLLINS.
No. KA 84 0889.
Court of Appeal of Louisiana, First Circuit.
May 29, 1985.
*550 Ossie Brown, Dist. Atty. by Kay Bates, Asst. Dist. Atty., Baton Rouge, for plaintiff-appellee.
David Price, Baton Rouge, for defendant-appellant.
Before COLE, CARTER and LANIER, JJ.
COLE, Judge.
The main issue presented is whether or not the signing of a waiver of rights form and subsequent inculpatory statements by defendant were free and voluntary. Also, the defendant questions whether or not the sentence imposed is excessive.
On December 7, 1983, defendant, Jerry Collins, was charged by bill of information with attempted second degree murder and aggravated burglary, in violation of La. R.S. 14:30.1, 14:27 and 14:60.[1] His trial began on February 27, 1984, and on February 28, the jury found him guilty on both charges. The trial court sentenced defendant to serve fifty years at hard labor for attempted second degree murder, and thirty years at hard labor for aggravated burglary, both sentences to run concurrently. Also, pursuant to La.R.S. 14:95.2, two additional years for the use of a firearm in the attempted second degree murder was imposed, to be served consecutively without benefit of parole, probation, suspension of sentence or credit for good time.[2] Defendant appeals, arguing two assignments of error, as follows:
1. The trial court erred by ruling statements made by defendant and a "rights form" signed by him were admissible.
2. The trial court erred by imposing an excessive sentence.
On October 9, 1983, around 4:30 a.m., William Floyd Singleton, the victim, awakened by the barking of his dog, saw the shadow of a man in his bedroom doorway. The victim hesitated, and then jumped out of bed to confront the supposed intruder. Before he reached the intruder, the intruder fired a shot, which struck a wall. The victim continued forward, placing his hands on the intruder. Another shot was fired and even though the victim was struck in the abdomen, he kept a firm grip on the intruder and a struggle ensued. Somehow, they ended on the floor in a second bedroom, where the victim's baby was sleeping.
Barbara G. Earle, who was living with the victim, was sleeping beside him when the incident began. She called the police and ran to the neighbors to get help. Carol Veals was the first neighbor to arrive. She helped keep the barrel of the pistol held by the intruder from pointing toward anyone. Her son, Robert Lewis Bennett, arrived and took the pistol away from the intruder. Robert then tried to remove a red bandana the defendant wore to shield his identity. Another fierce struggle ensued and a lamp in the room caught fire. Confusion broke out, Carol tried to smother the fire and Robert struck the intruder on the head *551 several times with a baseball bat. The fire was put out. The red bandana was removed revealing defendant as the intruder. Carol, Robert, and Carol's husband, Henry Veals, watched defendant until the arrival of the police.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends the trial court erred in permitting into the record over objection a signed rights form and inculpatory statements. Defendant contends he never signed any waiver of rights form or made any statements. Further, he claims he was in no physical condition to intelligently and freely waive his right to remain silent.
Before the state may introduce a confession into evidence, it must prove beyond a reasonable doubt that statement was free and voluntary. La.R.S. 15:451; State v. Wright, 441 So.2d 1301 (La.App. 1st Cir. 1983). Admissibility of a confession is a matter for determination by the trial court. After reviewing the record, we find the trial court's ruling of admissibility should not be disturbed. We are convinced the state proved affirmatively the defendant's confession was freely and voluntarily made after having been fully advised of his Miranda rights.
During the predicate, defendant did deny signing any rights form or making any confession, but a trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Norman, 448 So.2d 246 (La.App. 1st Cir.1984), reversed in part on other grounds, 452 So.2d 1178 (1984). Further, in reviewing a trial court's ruling on the admissibility of a confession, its conclusions on credibility are entitled to respect due those made by one who saw the witnesses and heard them testify. State v. Woods, 435 So.2d 1137 (La.App. 1st Cir.1983).
It is apparent the trial court found the testimony of Detective Orrell H. Ryan more credible than the defendant's testimony. Detective Ryan explained the Miranda rights, obtained defendant's signature on the waiver form and received the confession by defendant. Detective Ryan was aware of the overwhelming evidence linking the defendant to these crimes, including an arrest at the scene and numerous positive identifications. We note the point urged by the state in brief; in light of the evidence it is highly unlikely Detective Ryan felt it necessary to fabricate a confession, forge the defendant's signature on the rights waiver form and then perjure himself in court. This court is convinced the signing took place and the statements were made by the defendant.
Our inquiry must now focus upon whether the defendant was fully capable of understanding his Miranda rights and also capable of freely and voluntarily waiving them. The defendant had been struck repeatedly in the head with a metal baseball bat. However, treatment was administered for these injuries and the defendant was released into police custody. No medical expert has indicated a condition existed in defendant which would prevent him from exercising clear thought. In fact, the weight of the evidence is in favor of clear thought. Detective Ryan testified the defendant stated he understood each and every right read to him by the detective. Further, the defendant's waiver of rights occurred after treatment in the hospital and the subsequent release from the hospital. We can assume the injuries to defendant were not so great as to impair his thought process. Otherwise, he would not have been released by the hospital personnel. Thus, we find this assignment of error is without merit. See, State v. Clark, 340 So.2d 208 (La.1976), cert. denied, 430 U.S. 936, 97 S.Ct. 1563, 51 L.Ed.2d 782 (1977).

ASSIGNMENT OF ERROR NUMBER TWO
Defendant argues the trial court imposed excessive sentences.
The sentences imposed, to be served concurrently, represent the maximum allowed by law for attempted second degree murder and aggravated burglary. Defendant claims those sentences are excessive because *552 he is not the most egregious or blameworthy of offenders. In particular, he argues the trial court erred in determining the period of incarceration by focusing solely on his arrest record.
Although a sentence is within statutory limits it may still be adjudged excessive. State v. Sepulvado, 367 So.2d 762 (La.1979). Maximum sentences are appropriately imposed in cases involving the most egregious and blameworthy offenders within a class. State v. Telsee, 425 So.2d 1251 (La.1983); State v. Robinson, 431 So.2d 104 (La.App. 1st Cir.1983).
However, the trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed should not be set aside as excessive in the absence of a manifest abuse of discretion. State v. Shields, 444 So.2d 287 (La.App. 1st Cir.1983), writ denied, 446 So.2d 312 (La.1984).
In State v. Telsee, supra, the Louisiana Supreme Court lists several factors found within the sentencing guidelines of La.Code Crim.P. art. 894.1 which give insight into the nature of the offender and his offense. They are whether "(1) there is undue risk the defendant will commit another crime, (2) the defendant needs to be institutionalized, (3) a lesser sentence will deprecate the seriousness of defendant's crime, (4) defendant's conduct caused or threatened harm, (5) defendant has a criminal record, (6) defendant will respond to rehabilitation." [Footnote omitted.] State v. Telsee, 425 So.2d at 1253-4.
The record is replete with references by the trial court carefully weighing these considerations and several others. The trial court perceived the defendant would commit another crime during a period of probation; defendant needed to be institutionalized; a lesser sentence would deprecate the seriousness of the crime; the evidence showed defendant caused the incident which narrowly missed ending the life of William Floyd Singleton; and defendant's criminal record, which shows a history of repeated involvement in violent crimes, indicates defendant would probably not respond to rehabilitative treatment.
The record disputes defendant's allegation the trial court's sole consideration in determining the sentences was defendant's arrest record. We find no manifest abuse of discretion on the part of the trial court in sentencing.
We note the State in this case failed "to charge the defendant with the use of a firearm" or to "move timely for enhancement of penalty." Because of this the firearm enhancement statutes, La.R.S. 14:95.2 and La.Code Crim.P. art. 893.1, are not mandates for sentencing for the trial court. State v. Coleman, 465 So.2d 709 (La.1985). (But see State v. Roussel, 424 So.2d 226 [La.1982]).[3] However, the trial court applied La.R.S. 14:95.2 to the attempted second degree murder sentence (although not to the aggravated burglary sentence). (La. Code Crim.P. art. 893.1 was not applied to either sentence.) In Coleman the Louisiana Supreme Court did not pass on whether or not the trial court could apply one, both or neither of the firearm enhancement statutes on its own motion when the State failed to perform either condition precedent to make those statutes mandatory. In Roussel the court ruled La.R.S. 14:95.2 need not be charged and the opinion does not reflect if the State moved for enhancement. Prior to Coleman the courts of appeal of Louisiana held the firearm enhancement statutes could be applied by trial courts on their own motion. Coleman does not appear to overrule this jurisprudence. Accordingly, we find the trial court properly applied La.R.S. 14:95.2 to the attempted second degree murder sentence.
This assignment of error is without merit.
*553 For the foregoing reasons, the convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] Defendant was charged with second degree murder. However, the bill of information cited an incorrect criminal statute provision for this charge, La.R.S. 14:30, instead of La.R.S. 14:30.1, the correct statutory citation. It is obvious this error did not mislead the defendant to his prejudice. La.Code Crim.P. art. 464. See also, State v. Sims, 426 So.2d 148 (La.1983).
[2] On March 23, 1984 defendant was convicted of aggravated rape and aggravated burglary arising out of a separate criminal transaction. See State v. Collins, 470 So.2d 553 (La.App. 1st Cir. 1985), for the appeal taken from the March 23, 1984 convictions.
[3] See State v. Wade, 470 So.2d 562 (La.App. 1st Cir.1985), for discussion of Roussel and the jurisprudence that flowed from it and of Coleman.