NORRIS, Judge.
Defendant Sheldon W. Hanner was indicted by a LaSalle Parish grand jury for second degree murder, LSA-R.S. 14:30.1. Because of extensive pretrial publicity, defendant obtained a change of venue to Winn Parish. When the jury there was unable to reach a verdict, the judge declared a mistrial. Before the second trial, the defendant and prosecutor announced a plea bargain whereby Hanner would plead guilty to the lesser included offense of manslaughter, LSA-R.S. 14:31. The trial judge accepted the guilty plea and subsequently sentenced Hanner to fourteen years at hard labor on the manslaughter charge. He imposed an additional, consecutive sentence of two years at hard labor without benefit of parole, probation, suspension of sentence or good time, for the use of a firearm in the crime, pursuant to LSA-R.S. 14:95.2. From this sentence, defendant has appealed, raising five assignments of error. The first asserts that the sentence is excessive. The next three assert that the additional two years were illegal because the defendant was never afforded notice that he would be subject to the sentence enhancement. The final assignment asserts that the guilty plea was involuntary because of the failure to inform the defendant of the sentence enhancement. We affirm.
FACTS
Defendant’s first trial, which ended in a hung jury, lasted three days. Even though the parties stipulated that the trial proceedings would be admitted in evidence for purposes of the subsequent guilty plea, the transcript was not made part of the record on appeal. Thus our exposition of the facts is taken, of necessity, from an extract of the defendant’s statements and from various exhibits in the record.
The victim was Barbara Hanner, Sheldon Hanner’s wife. On the night of May 31, 1982, she was visiting her friend Cathy Lambeth. Sheldon called the Lambeth house and asked if his wife was there. Barbara got on the phone and an argument *428 ensued; she hung up when Sheldon began cursing at her. Then Sheldon drove to the Lambeth house where he pounded on the door and demanded to see his wife. When Barbara refused to come out, Sheldon got back in his car and drove a short distance down the road, parked and waited. Still fearful for their safety, Cathy Lambeth called one of her relatives, Larry Lambeth, and asked him to come pick them up. Larry did so, carrying Barbara, Cathy and Cathy’s children back to his own house. As soon as they arrived there, Sheldon came up and started beating on Larry’s truck, again demanding his wife. He accused her of dragging all their neighbors into their problems; he called her vile, epi-thetical names. He went to his car, got a pistol, and threatened to shoot Barbara if she did not come along. At one stage he cooled down, set the gun aside, and convinced Cathy that the fight was over and that she could go inside. Larry took the pistol and placed it back in Sheldon’s car; then he left. Later, however, Sheldon became enraged again. He broke the window in Larry’s truck, opened the door and pulled Barbara out. He dragged her by the hair to his car and forced her in. They drove off shortly before 11 p.m.
At 11:20 p.m., Sheldon drove his wife to the LaSalle General Hospital emergency room and told the nurses that she had been shot. He left immediately. Barbara Han-ner was dead on arrival with two bullet wounds to her abdomen and chest. Authorities began a massive search for Sheldon. His abandoned ear was found about an hour later; he himself was apprehended the following morning about three miles away; he surrendered peacefully.
ASSIGNMENT NO. 1
Hanner contends that his sentence, though within the statutory limits, is constitutionally excessive. LSA-Const. art. I § 20; State v. Sepulvado, 367 So.2d 762 (La.1979). He contends that the forensic evidence overwhelmingly supports a finding of negligent homicide rather than manslaughter or second degree murder. He suggests that a sentence within the negligent homicide range, or five years, would be more appropriate. See LSA-R.S. 14:32. We note at the outset, however, that the offense to which Hanner pled was manslaughter, and that he has not pointed out in brief what the favorable forensic evidence is.
The trial court correctly observed that the killing occurred while Hanner was engaged in an act of simple kidnapping. Since kidnapping is not one of the enumerated felonies in LSA-R.S. 14:30 or 14:30.1, it places this killing within the felony-homicide language of the manslaughter statute, less the intent to kill or inflict great bodily harm. LSA-R.S. 14:31(2)(a). Thus the argument for a penalty in the range of negligent homicide is without merit.
Furthermore, Hanner received a substantial reduction of maximum possible exposure by pleading to manslaughter.[1] While not controlling, the plea bargain is a factor in determining excessiveness. State v. Smack, 425 So.2d 737 (La.1983). This is so regardless of defendant’s speculation of what a second jury would have found.
Hanner also argues that the trial court failed to comply with the sentencing guidelines of LSA-C.Cr.P. art. 894.1. As a result, he claims, the sentence was not sufficiently particularized to the offense and the offender. The trial court need not, however, articulate every aggravating and mitigating circumstance outlined in art. 894.1, provided the record reflect that he adequately considered them. State v. Smith, 433 So.2d 688 (La.1983); State v. Hammonds, 434 So.2d 452 (La.App.2d Cir.1983), writ denied 439 So.2d 1074 (La.1983).
The trial court specifically noted, “None of the matters set forth in Paragraph (B) of art. 894 [are] found to be present in this case.” Defense counsel likewise failed to urge any mitigating factors, either at the sentencing or before this court in brief. In *429 contrast, the trial court gave measured consideration to defendant’s prior criminal record, which was quite extensive. Though not a model of art. 894.1 compliance, the trial court’s performance was adequate.
Finally, the sentence does not appear to be an abuse of discretion; it does not shock our sense of justice. State v. Square, 433 So.2d 104 (La.1983); State v. Bonanno, 384 So.2d 355 (La.1980).
This assignment lacks merit.
ASSIGNMENT NO. 2
Here Hanner contends that he was entitled to notice “by indictment or information” of the state’s intent to ask for the enhanced sentence provision of R.S. 14:95.-2.[2] He urges that the Constitution of 1974, art. I § 15, mandates notice by indictment or information.[3]
Defendant admits, however, that the jurisprudence holds contrary to his contention. The first ease to consider the effect of R.S. 14:95.2 was State v. Roussel, 424 So.2d 226 (La.1983). There, the court found “no substance” to the contention that a defendant must be separately charged under R.S. 14:95.2. The rule of Roussel has been routinely applied. See, e.g., State v. Hogan, 454 So.2d 1235 (La.App.2d Cir.1984); State v. Wade, 470 So.2d 562 (La.App.1st Cir.1985). With the matter thus settled, this argument lacks merit.
Hanner also asks us to analogize R.S. 14:95.2 to the multiple offender statute, LSA-R.S. 15:529.1, which expressly requires a hearing to prove prior convictions. He asserts the proof of use of a firearm in a crime must be shown at a similar hearing. Cf. Joseph, Developments in the Law 1980-81, 42 La.L.Rev. 693, 702 (1982). We note, however, that R.S. 15:529.1 expressly requires a hearing, while R.S. 14:95.2 does not. We will not infer, from the legislative silence, an intent to require a similar hearing. Furthermore, the fact of a prior conviction is evidence not likely to be presented at a defendant’s criminal trial. See LSA-R.S. 15:495. By contrast, the use of a firearm is a fact presented and proved. Thus, the analogy between the sentence enhancement statute and the habitual offender statute simply does not obtain. See State v. Barberousse, 458 So.2d 569 (La.App.3d Cir.1984), writ granted 468 So.2d 565 (La.1985). We recognize that a hearing prior to sentencing might be necessary to prove the use of a firearm in certain guilty plea situations.
This assignment lacks merit.
ASSIGNMENTS NOS. 3 & 4
Here, Hanner contends that even if he was not entitled to formal notice by indictment or information, he was nevertheless entitled to “other notice” of the violation of R.S. 14:95.2. He claims that failure to do so violated his constitutional right to *430 be- informed of the nature and cause of the accusation against him as well as his right of due process. LSA-Const. art. I, §§ 13, 2.
The state, however, contends that Han-ner did in fact receive notice that he would be subject to the enhanced sentence. At the Boykin hearing, the following colloquy occurred:
BY THE COURT: Do you also understand that the maximum sentence that you might receive on this plea is twenty-one years?
BY MR. HANNER: Yes, sir.
BY THE COURT: Do you understand that ...
BY MR. HENNIGAN: Excuse me, Judge.
BY THE COURT: Huh?
BY MR. HENNIGAN: Twenty-three (inaudible) use of a firearm.
BY THE COURT: Okay. Twenty-three years. And do you understand that in tendering this plea there has been no agreement by the Court as to any sentence in this case?
BY MR. HANNER: Yes, sir.
Boykin Tr. p. 6.
Hanner has also directed our attention to this colloquy but argues that it is inadequate as notice; he contends it underscores the lack of notice by showing the judge’s unawareness of the enhancement provision.
Hanner’s contention on this issue is appealing when considered only in the narrow context of the guilty plea colloquy. In the broader scope of the entire proceeding, however, the argument is not tenable. The defendant had spent three days in a jury trial where he urged, as his main defense, that the shots that killed his wife were accidentally discharged. Even if we disregard his attempted defense at the trial, we must view the overwhelming evidence of a shooting death as adequate to warn the defendant that R.S. 14:95.2 was applicable. Part of the record on appeal consists of the coroner’s report which lists the cause of death as “shock due to multiple (2) gunshot wounds.” R.p. 145. The remainder of the transcript was not designated as record, but defense counsel placed it in evidence at the Boykin hearing. Boykin Tr. p. 14. Moreover, the sentencing judge had presided at the trial that ended in a hung jury and mistrial; he knew the facts of the case.
This was not, therefore, a situation of a simple guilty plea, where the sentencing judge relied on nothing more than the indictment and a presentence investigation for sentencing. In brief, Hanner has attempted to distinguish this case from the long line of cases, starting with Roussel, that deny relief because “adequate notice and opportunity to defend against [R.S. 14:95.2] are afforded to the accused.” We find that under the particular circumstances of this case, the defendant had adequate notice and the record adequately proved defendant’s use of a firearm in the commission of the crime to which he pled guilty. Our research has revealed one case, not cited by Hanner, in which a sentence was set aside because of total failure of the sentencing judge to inform the defendant that he would apply enhancements to her case. In State v. Gay, 463 So.2d 70 (La.App.3d Cir.1985), the defendant was indicted for second degree murder but pled guilty to manslaughter with the specific understanding that her maximum sentence would be twenty-one years. She received seven years pursuant to two sentence enhancement statutes: R.S. 14:95.2 and LSA-C.Cr.P. art. 893.1.[4] Our brethren on the third circuit held that the imposition of two sentence enhancements was a breach of the plea bargain; they vacated the sentence.[5] *431 The instant case is inapposite to Gay. Hanner received notice both at the first trial and at the Boykin hearing that the mandatory firearm enhancement would be applicable. The notice was not formal but it was certainly adequate.
This conclusion is fortified by an analysis of counsel’s objection after sentence was imposed. Defendant’s attorney raised the following objection:
[BY THE COURT:] Does the defendant desire ... intend to appeal Mr. Mauf-fray?
BY MR. MAUFPRAY: May it please the Court, I believe that the record is absent of any formal or official notice of the status offense contained in R.S. 14:95.2. So we would voice an objection to the ... to the sentence of the Court on that. And I haven’t talked to my client, but I am certain that we will appeal the sentence.
BY THE COURT: Let the objection be noted. It is overruled.
Sentencing Tr. p. 7.
The phrasing of this objection sounds more of anticipation than of surprise. Hanner voiced no objections or questions when the assistant district attorney corrected the sentencing judge’s statement of the maximum sentence. We feel Hanner was fully aware of the potential enhancement.
We are cognizant of a number of writs currently under consideration by. the supreme court. In State v. Hogan, supra, State v. Kennedy, supra, State v. Jackson, 454 So.2d 211 (La.App.1st Cir.1984), State v. Blache, 464 So.2d 1082 (La.App.1st Cir.1985) and State v. Street, 464 So.2d 1035 (La.App.1st Cir.1985), the trial courts imposed two sentence enhancements to one offense. In State v. Barbarousse, supra, the trial court imposed the sentence enhancement of LSA-C.Cr.P. art. 893.1 without formal notice.[6] The supreme court may rule in these cases that notice is a requirement before R.S. 14:95.2 may be applied. See also Chief Justice Dixon’s dissent from denial of writs in State v. Cage, 446 So.2d 1214 (La.1984), reconsideration denied 449 So.2d 1024 (La.1984). In the absence of a direct statement by the supreme court to overrule Roussel, or a legislative amendment, we cannot reverse this conviction for inadequate notice as appellant urges. This assignment lacks merit.
ASSIGNMENT NO. 5
Here, Hanner contends that his guilty plea was involuntary because of the sentencing judge’s failure to warn him about the mandatory sentence enhancement provision. We have already determined, however, that the sentencing judge effectively warned Hanner of his potential exposure and that Hanner knew of the enhancement provision even without formal notice; this undermines the premise of Hanner’s argument. Out of abundant caution, we have nevertheless examined both the Boykin transcript and the entire proceedings for any evidence of involuntariness. State v. Davis, 457 So.2d 848 (La.App. 1st Cir.1984). Our standard is whether, under all the circumstances, the guilty plea was entered knowingly and voluntarily. Santobello v. New York, 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971); State v. Jones, 398 So.2d 1049 (La.1981). The voluntariness of the plea must be determined according to the factors existing at the time it was entered. State v. Dunn, 408 So.2d 1319 (La.1982).
Our review of the record produces no questions or problems about the voluntariness of the plea. We particularly note that *432 Hanner had already stood trial. This should have imparted to him a full understanding of his rights of counsel, of confrontation, of jury trial and his right against self-incrimination. The earlier trial also made him face the prospect of a life sentence for second degree murder. The reduced charge of manslaughter seems, under the circumstances, a well advised and well negotiated plea. Furthermore, the Boykin examination itself was very thorough. Hanner convinced the sentencing judge that his plea tender was informed, knowing and voluntary. Finally, defendant’s objection complained only of lack of formal notice, not lack of voluntariness. We find no merit in Hanner’s contention that his plea was involuntary.
We recognize that proof of voluntariness may not be apparent from the trial or pleading transcript. If it is appellant’s contention that something outside the record vitiated his plea, then his remedy is through post conviction relief where he may develop his allegations for the record. Our review of the instant record reveals no irregularities. This assignment lacks merit.
For the reasons expressed, appellant’s conviction and sentence are affirmed.
AFFIRMED.

. The penalty for second degree murder is life imprisonment at hard labor without benefit of parole, probation or suspension of sentence. LSA-R.S. 14:30.1.

. § 95.2. Additional penalties for possession of a firearm or explosive device in the commission of certain crimes
A. Notwithstanding any other provisions of law to the contrary, any person who uses a firearm or explosive device at the time he commits or attempts to commit the crime of second degree murder, manslaughter, aggravated battery, simple kidnapping, aggravated escape, aggravated burglary, aggravated arson, attempted aggravated rape, attempted first degree murder, or attempted aggravated kidnapping shall upon conviction serve a term of two years imprisonment for the first conviction and upon conviction for each second and subsequent offense listed in this Section, he shall serve a term of five years imprisonment.
B. The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment in the same manner as provided in the offense for which he was convicted and without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilty or imposition of sentence shall not be suspended.
C.The prison terms provided under the provisions of this Section shall run consecutively to any other penalty imposed upon conviction of any of the crimes listed in this Section.

. LSA-Const. art. I § 15 provides in part:
Prosecution of a felony shall be initiated by indictment or information, but no person shall be held to answer for a capital crime or a crime punishable by life imprisonment except on indictment by a grand jury.

. LSA-C.Cr.P. art. 893.1 imposes a minimum sentence, for manslaughter committed with a firearm, of five years without benefit of probation, parole, or suspension of sentence. The two-year enhancement of LSA-R.S. 14:95.2 is without benefit and without good time.

. The chief judge of this court has expressed the opinion that no more than one sentence enhancement can be applied to the same offense. See State v. Hogan, 454 So.2d 1235 (La.App. 2d Cir.1984) (Hall, J., dissenting), writ granted 468 So.2d 565 (La.1985) and State v. Kennedy, 463 So.2d 808 (La.App. 2d Cir.1985) (Hall, J., dis *431 senting from refusal to grant rehearing), writ granted 468 So.2d 565 (La.1985).

. In connection with LSA-C.Cr.P. art. 893.1, we note the recent decision of State v. Coleman, 465 So.2d 709 (La.1985). The court there seems to hold that art. 893.1 enhancement is not absolutely mandatory: if the D.A. neither charges the defendant with use of a firearm nor timely moves for enhancement, then the sentencing judge may omit art. 893.1, and the result is not an illegal sentence. In the instant case, there was adequate notice for purposes of LSA-R.S. 14:95.2 under Roussel, supra. Defendant Han-ner is indeed fortunate that he was not subjected to art. 893.1 enhancement as well. See Coleman, supra at 711-712.