479 So.2d 592 (1985)
STATE of Louisiana
v.
James QUINN.
No. KA 85 0351.
Court of Appeal of Louisiana, First Circuit.
November 19, 1985.
Johnny McGary, Asst. Dist. Atty., Amite, for plaintiff-appellee State of Louisiana.
Thomas Foley, Asst. Public Defender, Amite, for defendant-appellant James Quinn.
Before EDWARDS, LANIER and JOHN S. COVINGTON, JJ.
*593 LANIER, Judge.
The defendant, James Quinn, was charged by grand jury indictment with second degree murder in violation of La.R.S. 14:30.1. He pled not guilty, waived his right to trial by jury and, after a trial, was found guilty as charged by the trial judge. Quinn filed a motion for a new trial contending the verdict was contrary to the law and the evidence[1] and a motion in arrest of judgment contending the verdict was not responsive to the indictment and was so defective it could not form a basis for a valid judgment. These motions were denied. The trial judge then[2] sentenced Quinn to life imprisonment at hard labor without benefit of probation, parole or suspension of sentence. Pursuant to La.R.S. 14:95.2, the trial judge enhanced the sentence by two additional years to run consecutively with the life sentence. This appeal followed.

FACTS
Gloria Jean Williams testified her sister, Claudia Mae Grimes, was living with Quinn in Amite on June 9, 1984. On that date, Ms. Williams and her boyfriend, Eddie Lee Self, accepted an invitation from Ms. Grimes to attend a barbecue dinner at the trailer occupied by Ms. Grimes and Quinn. They arrived at about 5:30 p.m. Because it started raining, everyone went inside the trailer. While a record player was being carried inside, the speaker wire became disconnected and this precipitated an argument between Ms. Grimes and Quinn. Ms. Grimes did nothing to provoke or start the argument. As the argument proceeded, Quinn told Ms. Grimes to go get her clothes and leave. Ms. Grimes placed a "spread" on the floor and started putting clothes into it. Quinn then locked the door of the trailer, preventing Ms. Grimes from leaving. Ms. Grimes sat down. Then Ms. Grimes went to the "ice box" and got herself and defendant a beer. At about 11:30 p.m., Ms. Grimes was standing in the kitchen when Quinn, who was also in the kitchen, "got up and went around her [Ms. Grimes] like he was going to the bathroom and ... started shooting." Three shots were fired. When the first shot was fired, Ms. Grimes "clapped her hands up side [against] her head", and then she shook her head and turned. She stood there for a second, and Quinn shot her again. She then fell backwards to the floor. After the second shot was fired, Ms. Williams grabbed Quinn and told him not to shoot Ms. Grimes again because she was already dead, and "he turned around and shot down on the floor." At the time of the first shot, Ms. Grimes was standing by the stove with her right side toward defendant, i.e., she was not facing him. There was a knife on the kitchen table, but Ms. Grimes made no attempt to grab it. She did not in any way threaten or attack Quinn prior to the shooting. From the time the argument concerning the stereo wire began until the final shot was fired, Ms. Grimes was unarmed, did nothing aggressive, made no threats, and did not put defendant in any danger of losing his life or being seriously hurt.
Eddie Lee Self testified that he saw Quinn shoot Ms. Grimes on the date in question at about 10:00 or 11:00 p.m. He testified three shots were fired. When the first shot was fired, Ms. Grimes grabbed the side of her head. She fell backwards immediately after the second shot was fired. "[T]hen he shot her some more." *594 Mr. Self further testified that he did not see Ms. Grimes do anything to threaten defendant. Mr. Self and Ms. Williams reported the shooting to the police. They returned to the trailer with the police to show them its location.
Don Alexander, a deputy sheriff with the Tangipahoa Parish Sheriff's Office, testified he returned to the scene with Mr. Self and Ms. Williams to investigate the shooting at about 11:00 or 11:30 p.m. Alexander approached the trailer with caution and called out Quinn's name. Quinn walked out the front door. Before Alexander could say anything, Quinn said "I shot the bitch." Alexander then, before saying anything else, read defendant his rights and placed him under arrest. Alexander testified that defendant's speech was coherent and he was calm. "He didn't seem drunk, kind of like nothing had happened, you know."
Johnny Jones, an investigator for the Tangipahoa Parish Sheriff's Office, testified he also investigated the incident and recovered a .38 caliber pistol found lying on a bed inside the trailer. The gun contained three spent cartridges and two live ones. Jones further testified that, on the night of the shooting, Quinn did not appear nervous, angry, or excited in any way.
Dr. Russell T. Ribando, Tangipahoa Parish Coroner, testified he performed an autopsy on the victim and located two gunshot wounds in her body. The cause of death was a bullet wound which entered the victim's back near the right scapula, went through her chest, her aorta and lodged in her left breast. The other bullet wound was a surface wound which entered and exited the victim's left breast.
James Quinn took the stand in his own defense and testified that he met Ms. Grimes on May 12, 1982. They began living together shortly thereafter. On the night of the shooting, Quinn and Self went to town to get some barbecue sauce and, when they returned to the trailer, Quinn observed the wire disconnected from the stereo. He asked Ms. Grimes about the stereo, and "she blew her top". Her purse was on the kitchen table with the gun inside it. She made a lunge for the gun, and he beat her to it. He grabbed the purse, took the gun out and started shooting. Before he started shooting, Ms. Grimes reached for one of two butcher knives that were on the kitchen table. He thought Ms. Grimes was going to try to kill him. Quinn also testified that in January of 1983, Ms. Grimes shot at him. She pulled a knife on him at his place of employment, Clemmon's Brothers Lumber Company, in February of 1984 while they were arguing. She also threatened him with a knife at Gloria's Cafe in June of 1983.
Billy Ray Ebarb, a co-worker of defendant, testified that in February of 1984, from a distance of about 45-50 yards, he saw Ms. Grimes take an object which he could not identify from her purse and saw defendant backing up immediately thereafter.
Irma Jean Smith, who along with her husband operated Gloria's Cafe in June of 1983, testified that she saw Ms. Grimes pull a knife on defendant and that she took the knife away from Ms. Grimes. She testified that defendant had done nothing to threaten Ms. Grimes at the cafe.
The parties stipulated Ms. Grimes was convicted of manslaughter on March 8, 1978, in Michigan.
Julius Quinn testified he was with the Amite City Police Department and was James Quinn's brother. He never observed James use violence towards Ms. Grimes. On one occasion, he observed James and Ms. Grimes at a lounge and Grimes "had a big jug or something to hit him [James] with". Julius got James out of the lounge and told him to leave Ms. Grimes alone. About ten or twelve years ago, he arrested Ms. Grimes for "cursing", "running off at the mouth" and "arguing with me".
Edward J. "Rudolph" Smith testified he was the superintendent at the Clemmon's Brothers mill where James Quinn worked. Quinn had a good work record. On one occasion, Quinn and Ms. Grimes came to *595 his house and Ms. Grimes had a pistol in her back pocket. James Quinn never threatened any employees at the mill and did not cause trouble.
In rebuttal, the State recalled Ms. Williams to the stand. She testified she did not know if defendant had gotten the gun from Ms. Grimes' purse or not, but she had seen defendant with the gun prior to the shooting when they were in the yard. She did not see Ms. Grimes reach for a knife or the gun.

SUFFICIENCY OF EVIDENCE

(Assignment of Error No. 2)
Defendant asserts the evidence was insufficient to convict him of second degree murder. He contends the appropriate verdict was either not guilty or guilty of manslaughter. He argues that, because the testimony adduced at trial indicates Ms. Grimes had committed past acts of violence against him, he acted in self-defense, he lacked specific intent to kill or inflict great bodily harm, or, alternatively, he acted out of sudden passion.
In State v. Mathews, 375 So.2d 1165 (La. 1979), a majority of the Louisiana Supreme Court determined that the United States Supreme Court case of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) required that the standard of review when considering the sufficiency of the evidence to support a criminal conviction is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. This standard for the appellate review of facts in criminal cases has been made statutory. La.C.Cr.P. art. 821; State v. Captville, 448 So.2d 676 (La.1984); State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983).
A plea of not guilty places upon the State the burden of proving beyond a reasonable doubt each element of the crime with which the defendant is charged. La. R.S. 15:271; La.C.Cr.P. art. 804(A)(1); State v. Humphrey, 412 So.2d 507 (La. 1981); State v. Gomez, 433 So.2d 230 (La. App. 1st Cir.1983), writs denied, 440 So.2d 730 and 441 So.2d 747 (La. 1983). Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La.R.S. 14:30.1(1). Specific criminal intent is that state of mind which exists when the circumstances indicate the offender actively desired the prescribed criminal consequences to follow his act or failure to act. La.R.S. 14:10(1). Although intent is a question of fact, it need not be proven as a fact and may be inferred from the circumstances of the transaction. La.R.S. 15:445.
La.R.S. 14:31(1) defines manslaughter as follows:
A homicide which would be murder under either Article 30 (first degree murder) or Article 30.1 (second degree murder), but the offense is committed in sudden passion or heat of blood immediately caused by provocation sufficient to deprive an average person of his self control and cool reflection. Provocation shall not reduce a homicide to manslaughter if the jury finds that the offender's blood had actually cooled, or that an average person's blood would have cooled, at the time the offense was committed;
"Heat of blood" and "sudden passion" are not elements of the offense of manslaughter but are mitigating circumstances which may reduce the grade of a homicide. State v. Tompkins, 403 So.2d 644 (La.1981).
When the issue of self-defense is raised, the state has the burden of establishing beyond a reasonable doubt that a homicide was not committed in self-defense. State v. Lynch, 436 So.2d 567 (La. 1983). La.R.S. 14:20 provides, in pertinent part, as follows:
A homicide is justifiable:
(1) When committed in self-defense by one who reasonably believes that he is in imminent danger of losing his life or receiving great bodily harm and that the killing is necessary to save himself from that danger; *596 The self-defense issue on appeal is whether a rational fact finder, viewing the evidence in the light most favorable to the State, could have found beyond a reasonable doubt that the homicide was not committed in self-defense. State v. Matthews, 464 So.2d 298 (La.1985).
The trial judge's verdict indicates he accepted the Williams-Self version of events and rejected the defendant's conflicting testimony. Where there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, this is a matter of the weight of the evidence, not its sufficiency. Tibbs v. Florida, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982); State v. Kent, 434 So.2d 1258 (La.App. 1st Cir.1983), writ denied, 440 So.2d 727 (La. 1983). A determination of the weight of the evidence is a question of fact. Korman, 439 So.2d at 1101. This court has no appellate jurisdiction to review questions of fact in criminal cases. La.Const. of 1974, art. V, § 10(B). This court is constitutionally precluded from acting as "thirteenth juror" in assessing what weight to give evidence in criminal casesthat determination rests solely on the sound discretion of the trier of fact. The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Williams, 452 So.2d 234 (La.App. 1st Cir.1984), writ not considered, 456 So.2d 161 (La. 1984), reconsideration not considered, 458 So.2d 471 (La.1984). The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. Tompkins, 403 So.2d at 647.
The testimony of Ms. Williams and Mr. Self shows that Ms. Grimes did nothing to provoke defendant's violent attack upon Ms. Grimes. She was unarmed, did not attack or threaten defendant's life or place him in any danger of receiving great bodily harm. Defendant, without justification, fired three shots from a .38 caliber pistol at Ms. Grimes and killed her. The fatal wound came from a bullet which entered the victim's back at her right scapula, traveled through her aorta and chest and lodged in her left breast. The foregoing circumstances and the inferences arising therefrom are sufficient to support the conclusions that, beyond a reasonable doubt, the defendant possessed the specific intent to kill or inflict great bodily harm required for second degree murder, did not act in self-defense and did not act in heat of passion. See State v. Noble, 425 So.2d 734 (La.1983) and State v. Mullins, 464 So.2d 459 (La.App. 1st Cir.1985).
This assignment of error is without merit.

NOTICE OF DEFENSE BASED ON MENTAL CONDITION
The defendant contends the trial court committed error by refusing to allow him to present evidence on the affirmative defense of voluntary intoxication.
During his cross-examination of Eddie Lee Self, defense counsel attempted to question Self about the quantity of alcohol consumed by defendant on the day of the shooting. The State objected and asserted the failure of defense counsel to give notice of his intention to utilize the defense of intoxication barred the evidence. The court sustained the objection. Self was not asked any further questions. Counsel then approached the bench. Following an off the record discussion, defense counsel moved for permission to amend his defense to raise the defense of voluntary intoxication provided for in La.R.S. 14:15. The State objected to the motion because the defendant failed to comply with the provisions of La.C.Cr.P. art. 726[3] which require *597 advance notice of intent to use the defense of voluntary intoxication.[4] The court denied the motion.
The trial court properly sustained the State's objection to defense counsel's questions to Self and properly denied defense counsel's motion to amend his defense to include the defense of voluntary intoxication. Because defense counsel failed to give written notice to the district attorney of his intention to introduce testimony relating to intoxication and file a copy of such notice with the clerk as provided in La.C.Cr.P. art. 726(A), the trial court was authorized pursuant to La.C. Cr.P. art. 726 (B) to exclude the testimony of any witness offered by defendant on the issue of voluntary intoxication. State v. Gipson, 427 So.2d 1293 (La.App. 2nd Cir. 1983). This assignment of error is without merit.

PATENT SENTENCING ERROR
The evidence shows Quinn used a firearm to commit the offense. However, the indictment does not charge the offense was committed with a firearm and the minute entry of the sentencing does not show that the State moved for enhancement of sentence. In this posture, the trial judge was not mandated to enhance the sentence pursuant to La.R.S. 14:95.2. State v. Coleman, 465 So.2d 709 (La.1985). Nevertheless, the trial judge retained discretion to enhance. State v. Roussel, 424 So.2d 226 (La.1982); State v. Collins, 470 So.2d 549 (La.App. 1st Cir.1985).
Pursuant to La.R.S. 14:95.2(A), an additional two years must be imposed if a firearm is used to commit a second degree murder. Pursuant to La.R.S. 14:95.2(C), this prison term must be consecutive to the primary sentence. La.R.S. 14:95.2(B) provides as follows:
The penalty provided herein shall be in addition to any other penalty imposed under the provisions of this Title and such person shall serve the additional term of imprisonment in the same manner as provided in the offense for which he was convicted and without benefit of parole, probation, suspension of sentence or credit for good time and any adjudication of guilt or imposition of sentence shall not be suspended.

[Emphasis added].
The word "shall" indicates these statutory requirements are "mandatory". La.R.S. 1:3; La.C.Cr.P. art. 5; La.C.J.P. art. 4. Although the trial judge imposed the additional two years and made those years run consecutively to the primary sentence, he did not specify the enhanced term was without benefit of parole, probation, suspension or credit for good time. This is patent sentencing error. La.C.Cr.P. art. 920.
La.C.Cr.P. art. 882 authorizes an appellate court to correct an illegal sentence on review. The enhanced portion of the sentence imposed is less than the statutory minimum. Where there is no sentencing discretion involved in correcting an illegal sentence, it is immaterial whether the correction is effected by the trial court or an appellate court because the result is the same. State v. Fraser, 471 So.2d 769 (La. App. 1st Cir.1985). Since the corrected sentence is the only legal sentence that can be imposed, there is no due process violation. Cf. State v. Brisco, 470 So.2d 569 (La.App. 1st Cir.1985). The enhanced portion of the sentence will be amended accordingly.

DECREE
For the foregoing reasons, the conviction and the primary sentence are affirmed. *598 The enhanced portion of the sentence is amended to provide that the consecutive two years shall be served without benefit of parole, probation, suspension or credit for good time.
CONVICTION AFFIRMED; SENTENCE AMENDED AND AFFIRMED.
NOTES
[1] Insufficient evidence cannot be the basis for a new trial. State v. Korman, 439 So.2d 1099 (La.App. 1st Cir.1983). If the evidence supporting a conviction is insufficient, the defendant is entitled to a post verdict judgment of acquittal. La.C.Cr.P. art. 821. However, the insufficiency of the evidence supporting a conviction may be raised as an assignment of error on appeal.
[2] The record does not reflect that the trial court waited the required twenty-four hours after defendant's motion for new trial was denied before imposing sentence (La.C.Cr.P. art. 873), nor does the record indicate that defendant waived that waiting period. Defendant does not argue or in any way show that he was actually prejudiced by the failure of the trial court to observe the waiting period. Such failure on the part of the trial court is harmless error where defendant does not show actual prejudice. State v. Mason, 447 So.2d 1134 (La.App. 1st Cir.1984).
[3] La.C.Cr.P. art. 726 provides:

A. If a defendant intends to introduce testimony relating to a mental disease, defect, or other condition bearing upon the issue of whether he had the mental state required for the offense charged, he shall not later than ten days prior to trial or such reasonable time as the court may permit, notify the district attorney in writing of such intention and file a copy of such notice with the clerk. The court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make such other orders as may be appropriate.
B. If there is a failure to give notice as required by Subsection A of this Article, the court may exclude the testimony of any witness offered by the defendant on the issue of mental condition.
[4] The photo-electric intoximeter test, attached to the State's discovery answers, shows at 1:17 a.m. on June 10, 1984, Quinn had a blood alcohol concentration of 0.20 g%.