## NOT DESIGNATED FOR PUBLICATION

## STATE OF LOUISIANA

## COURT OF APPEAL

## FIRST CIRCUIT

## 2023 KA 0756

## STATE OF LOUISIANA

## VERSUS

## ROBERT CLARK, JR.

Judgment Rendered: **MAR 1 3 2024**

* * * * * * *

On Appeal from the 20th Judicial District Court
In and for the Parish of West Feliciana
State of Louisiana
Trial Court No. 21-WFLN-296

Honorable Sydney Picou Walker, Judge Presiding

* * * * * * *

Samuel C. D'Aquilla
District Attorney
Meredith W. Smith
Assistant District Attorney
St. Francisville, Louisiana

Attorneys for Appellee
State of Louisiana


Prentice L. White
Baton Rouge, Louisiana

Attorney for Defendant/Appellant
Robert Clark, Jr.

* * * * * * *

**BEFORE: THERIOT, PENZATO, AND GREENE, JJ.**

**PENZATO, J.**

The defendant, Robert Clark, Jr., was charged by amended grand jury indictment with second degree murder and pled not guilty. Following a jury trial, the defendant was found guilty as charged. The defendant moved for a new trial and a post-verdict judgment of acquittal, but the motions were denied. The defendant was sentenced to life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. The defendant now appeals, challenging the sufficiency of the evidence. For the following reasons, we affirm the conviction and sentence.

## FACTS

On August 19, 2018, the defendant and the victim, Dolan Franklin, inmates housed in the Eagle dorm (Eagle) at Louisiana State Penitentiary, were involved in a physical altercation. At approximately 5:41 a.m., inmates reported that Franklin was lying on the floor with his nose bleeding. Franklin subsequently died, and his cause of death was determined to be traumatic brain injury due to blunt force trauma.

## SUFFICIENCY OF THE EVIDENCE

In the sole assignment of error, the defendant argues the evidence was insufficient to support his conviction for second degree murder because the State's evidence was insufficient to rebut his self-defense claim.

The constitutional standard for testing the sufficiency of the evidence, as enunciated in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and adopted by the Louisiana Legislature in enacting La. Code Crim. P. art. 821, requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the

2

essential elements of the crime beyond a reasonable doubt. The *Jackson* standard of review is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, La. R.S. 15:438 provides that the trier of fact must be satisfied that the overall evidence excludes every reasonable hypothesis of innocence. *State v. Delco*, 2006-0504 (La. App. 1st Cir. 9/15/06), 943 So.2d 1143, 1146, writ denied, 2006-2636 (La. 8/15/07), 961 So.2d 1160.

The defendant was found guilty of second degree murder, which is defined in pertinent part as the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. La. R.S. 14:30.1(A)(1). "Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Though intent is a question of fact, it need not be proven as a fact. It may be inferred from the circumstances of the transaction. Specific intent may be proven by direct evidence, such as statements by a defendant, or by inference from circumstantial evidence, such as a defendant's actions or the facts depicting the circumstances. Specific intent is an ultimate legal conclusion to be resolved by the fact finder. *Delco*, 943 So.2d at 1146.

A defendant in a homicide prosecution who asserts that he acted in self-defense does not have the burden of proof on that issue because the State bears the burden of establishing beyond a reasonable doubt that the homicide was not perpetrated in self-defense. *State v. Burge*, 486 So.2d 855, 865 (La. App. 1st Cir.), writ denied, 493 So.2d 1204 (La. 1986). Louisiana Revised Statutes 14:20, in pertinent part, provides: "A homicide is justifiable: (1) [w]hen committed in self-defense by one who reasonably believes that he is in imminent danger of losing his

3

life or receiving great bodily harm and that the killing is necessary to save himself from that danger." However, an aggressor or one who brings on difficulty, as a general rule, cannot claim the right of self-defense unless he withdraws from the conflict in good faith and indicates his intention of abandoning the difficulty. See La. R.S. 14:21. The relevant inquiry on appeal is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond a reasonable doubt that the homicide was not committed in self-defense. *Burge*, 486 So.2d at 865; see *State v. Dunn*, 2021-0630 (La. App. 1st Cir. 12/22/21), 340 So.3d 77, 86-87, writ denied, 2022-00095 (La. 4/5/22), 335 So.3d 834.

Officer Rose Wilson and Lieutenant Dustin Young were both security guards on Eagle at the time of the incident. They testified the defendant never reported any difficulties with Franklin.

Lieutenant Tyleisha Wiley was a security guard on Eagle during the night shift prior to the incident. The defendant did not report any incident to her during her shift. Lieutenant Wiley, however, saw the defendant moving his belongings to the front of Eagle. She took the defendant outside of Eagle and asked him to explain. According to Lieutenant Wiley, the defendant stated he had not showered in a couple of days and wanted to be moved because he did not like showering in front of cameras after having been raped by five men while incarcerated. Lieutenant Wiley explained that the cameras were in place to provide security for the defendant, the other inmates, and the officers on duty, but she or another officer would be in Eagle when the defendant showered. Lieutenant Wiley specifically asked the defendant if anyone was trying to do something to him or if he feared for his life, and the defendant answered negatively. Lieutenant Wiley

4

neither heard nor saw anything during her shift that indicated the defendant was having difficulties with Franklin or any other inmate. Additionally, surveillance footage showed no altercation or argument between the defendant and Franklin prior to the incident. After speaking to the defendant, Lieutenant Wiley radioed her supervisor for assistance on Eagle. Subsequently, an officer was placed on Eagle while the defendant showered and the other inmates went to breakfast.

Captain James Henry Spurlock was captain of the camp that included Eagle at the time of the incident. He testified that if an inmate complained that he was having difficulty with another inmate, both inmates would be locked down pending an investigation. Captain Spurlock spoke with the defendant at approximately 5:10 a.m. or 5:15 a.m. prior to the incident. The defendant's only complaint was about lack of privacy in the showers. Captain Spurlock told the defendant to talk to Lieutenant Wiley about arranging for her or another officer to be present when the defendant showered. At approximately 5:10 a.m. on the day of the incident, Captain Spurlock saw the defendant and Franklin talking to each other in Eagle without any apparent friction or animosity.

At approximately 5:30 a.m., Corrections Major Chad Hardy responded after beepers were activated indicating distress. Major Hardy found Franklin lying on the floor of Eagle, bleeding from the head and barely breathing. Major Hardy suspected the defendant of attacking Franklin after speaking to the defendant while making rounds,[1] recovering a padlock in a bloody sock by the defendant's bed, and viewing surveillance footage. Major Hardy believed the defendant beat Franklin with the padlock in the sock. According to Major Hardy, as Corrections Major, he would have been informed of any disagreements or requests for

---

[1] The substance of the statement was ruled inadmissible.

protection, and he was not aware of any disagreement between the defendant and Franklin or of any request made by the defendant for protection from Franklin.

The defendant testified that he is transgender and has been diagnosed with gender dysphoria.[2] He was being treated with estrogen, which caused him to develop breasts and other female features. As a result of the defendant's condition, the Department of Corrections permitted him to shower by himself.

According to the defendant, approximately three weeks before the incident, Franklin made unwanted sexual advances toward the defendant. The defendant testified that on August 18, 2018, the day before the incident, while he was unconscious from drug use, Franklin raped him. The defendant claimed at approximately 2:00 a.m. on the day of the incident, Franklin indicated he would have sex with the defendant that night because the defendant now belonged to Franklin.

The defendant testified he began packing his personal belongings and, at approximately 3:00 a.m., approached Lieutenant Wiley to request that he immediately be moved out of Eagle. According to the defendant, Lieutenant Wiley wanted to know with whom he was having problems, but the defendant would not tell her. The defendant stated he made it clear to Lieutenant Wiley that he was not requesting to be moved due to problems with showering alone, but because he had problems with someone on the dorm. The defendant claimed Lieutenant Wiley called someone, who instructed that "first shift" would move him when they arrived later that morning. The defendant stated a cadet was left in the dorm as a solution.

---

[2] According to the defendant, this condition caused him distress when he was treated like a male because he felt as though he was female.

6

According to the defendant, Franklin continued making sexual comments to him and physically intimidated him. Thereafter, the defendant showered, returned to his bed, and fell asleep. The defendant testified he woke up when Franklin stated, "It's that time." The defendant stated he repeatedly told Franklin to leave him alone, but Franklin told him he had two choices - to leave the dorm or to have sex with Franklin. The defendant stated the cadet had left the dorm, and he could not leave because the dorm was locked. The defendant claimed he used his radio to strike Franklin as hard as he could. He then kicked Franklin in the head, face, and chest after Franklin began to sit up. The defendant conceded the padlock introduced into evidence belonged to him, but denied using it to strike Franklin.

Dorangel Smith, an Eagle resident, testified that he remembered the defendant packing his belongings to move in the early morning hours prior to the incident because of "some altercation" with Franklin. Smith further testified that the night before the incident, the defendant had smoked "mojo," and later complained to Smith that Franklin had raped him. Smith did not know if the defendant told security about the rape.

Surveillance footage showed no communication between Franklin and the defendant on August 19, 2018 between 2:45 a.m. and 5:36 a.m. At 5:34 a.m., Franklin was sitting on the footlocker at the end of his bunk bed while the defendant was wearing headphones and lying on the bottom bed of the bunk bed next to Franklin. At 5:36 a.m., the defendant removed his headphones and spoke to Franklin. At 5:37 a.m., the defendant got out of his bed, sat on his footlocker, and leaned forward to talk to Franklin. At 5:38 a.m., the defendant reached back with his left hand for an object, reached back with his right hand, and then struck Franklin, knocking him to the ground. Thereafter, the defendant stomped on

7

Franklin until two inmates removed him. However, the defendant then returned to Franklin's body and stomped on him four more times.

Any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that the defendant's killing of Franklin was not committed in self-defense. In finding the defendant guilty, the jury rejected the claim of self-defense and concluded that the use of deadly force under the particular facts of this case was neither reasonable nor necessary. The defendant argued his fatal attack on Franklin was necessary to protect himself. To the contrary, the State argued the defendant "sucker punched" Franklin and then repeatedly "stomped his head[.]" When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis that raises a reasonable doubt. *State v. Captville*, 448 So.2d 676, 680 (La. 1984). No such alternate hypothesis exists in the instant case.

In this matter, the jury was presented with conflicting testimony concerning whether the defendant's complaints to security guards on the morning of the incident were limited to concerns for privacy when showering or were requests for immediate removal out of Eagle. Additionally, the defendant denied using his padlock to knock out Franklin, but Major Hardy testified that the surveillance footage showed the defendant approaching Franklin and striking him with the sock containing the padlock. It was undisputed, however, that the defendant failed to name Franklin as the cause of his difficulties on Eagle, and had the defendant done so, protocol would have required that both the defendant and Franklin be locked down. The trier of fact is free to accept or reject, in whole or in part, the

8

testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. *State v. Eason*, 2019-0614 (La. App. 1st Cir. 12/27/19), 293 So.3d 61, 70-71. The law cannot permit even a harassed and threatened inmate of a penal institution to take the law into his own hands, arm himself, attack his enemy, and then, because of prior threats, claim justification for a homicide that follows. *Burge*, 486 So.2d at 866.

The defendant conceded he kicked Franklin in the head, face, and chest *after* he was on the ground. The defendant denied intending to kill Franklin. The verdict returned in this matter indicates the jury found that the State carried its burden of establishing beyond a reasonable doubt that Franklin's killing was not committed in self-defense. In reviewing the evidence, we cannot say that the jury's determination was irrational under the facts and circumstances presented to them. See *State v. Ordodi*, 2006-0207 (La. 11/29/06), 946 So.2d 654, 662; *State v. Pittman*, 93-0892 (La. App. 1st Cir. 4/8/94), 636 So.2d 299, 303 (finding evidence supported jury's rejection of justifiable homicide where the defendant continued beating the victim, who appeared unconscious, indicating that "the defendant was clearly in control of the situation, the victim was completely defenseless, and a continued beating was unnecessary"); *State v. Jones*, 598 So.2d 511, 515 n.1 (La. App. 1st Cir. 1992) (finding evidence supported jury's rejection of justifiable

9

homicide where the defendant kicked or stomped an unconscious victim and had to be physically restrained by a friend). An appellate court errs by substituting its appreciation of the evidence and credibility of witnesses for that of the fact finder and thereby overturning a verdict on the basis of an exculpatory hypothesis of innocence presented to, and rationally rejected by, the jury. *State v. Calloway*, 2007-2306 (La. 1/21/09), 1 So.3d 417, 418 (per curiam). By accepting a hypothesis of innocence that was reasonably rejected by the fact finder, a court of appeal impinges on a fact finder's discretion beyond the extent necessary to guarantee the fundamental protection of due process of law. See *State v. Mire*, 2014-2295 (La. 1/27/16), 269 So.3d 698, 703 (per curiam).

This assignment of error is without merit.

**CONVICTION AND SENTENCE AFFIRMED.**