STATE OF LOUISIANA,
v.
HENRY K. MULLER.
No. 2009 KA 1732.
Court of Appeals of Louisiana, First Circuit.
March 26, 2010.
Not Designated for Publication.
Hon. WALTER P. REED, District Attorney, Covington, Louisiana, KATHRYN W. LANDRY, Assistant District Attorney, Baton Rouge, Louisiana, Counsel for Appellee, State of Louisiana,
MARY E. ROPER, Baton Rouge, Louisiana, Counsel for Defendant/Appellant, Henry K. Muller.
Before: DOWNING, GAIDRY and McCLENDON, JJ.
McCLENDON, J.
Defendant, Henry K. Muller, was charged by bill of information with false personation of a peace officer, a violation of LSA-R.S. 14:112.1. Defendant entered a plea of not guilty and, following a jury trial, was found guilty as charged. Defendant was sentenced to two years imprisonment at hard labor. The trial court suspended one year of the sentence and ordered supervised probation upon release, with conditions, for five years. Defendant now appeals, designating two assignments of error. We affirm the conviction and sentence.

FACTS
In April 2008, a group of teenage boys playing football on a field next to the Pearl Acres Baptist Church in Slidell was approached on several occasions by defendant. Each time, defendant informed the boys that he was a police officer and that they were trespassing and needed to leave. Defendant was not a police officer, although at one time, he was a private detective and carried a private detective badge.
Detective Jason Mire, with the St. Tammany Parish Sheriff's Office, took the complaint about defendant from James Winther, one of the football players, and his mother, who was a police officer with the Mandeville Police Department. Based on the information, Detective Mire obtained an arrest warrant. Detective Mire and Deputy Mark Oster, also with the St. Tammany Parish Sheriff's Office, went to defendant's house in Lake Village Subdivision. A black Ford Crown Victoria Police Interceptor was in the driveway. The vehicle had dark tinted windows, four antennas on the trunk, a spotlight, push bumpers, a siren, a white strobe light in the center of the dashboard, a video camera, and a radar detector. Deputy Oster retrieved a loaded 9mm handgun from defendant's vehicle. Deputy Oster also found two private detective badges in the vehicle.
Winther, who was a seventeen-year-old Northshore High School football player, testified at trial that he and his friends played football on the field next to the Pearl Acres Baptist Church. He and his friends were given permission to play on the field by the church pastor, Pastor Bob.[1] They played football on Sundays. In describing the first incident, Winther stated that defendant drove up in his Crown Victoria. Winther's friends thought defendant was a police officer and that they were in trouble. Defendant told the boys that they were trespassing and they were all under arrest. Winther told defendant that he (defendant) was not a cop. Defendant said that he was. Winther informed defendant that he did not have a public license plate, and asked defendant for some identification. Defendant flashed a badge. However, it was done so quickly that Winther could not read the lettering on the badge. Winther then asked defendant for his police commission. Defendant quickly showed him a card. Winther told defendant that it was not a commission because there was no picture on the card. Winther also told defendant they had permission from Pastor Bob to be on the field. Defendant told the boys to be out by 5:00, and he then left. According to Winther, defendant approached them on two other occasions and demanded they leave or else they would be arrested.
James Johnson, another high school football player who played football with Winther and their friends on the church field, testified that on the first occasion, defendant drove up, remained in his car, and told the boys to leave. The second time, defendant got out of his car and approached the group. Defendant told them that he had previously told them to leave and that they could not come back. Winther asked defendant who he was. Defendant said he was an officer. Winther told defendant he was not an officer and that he wanted to see identification. Defendant "pulled out a badge and threw it in James's face." Winther and defendant began arguing. Johnson further testified that defendant approached them a third time when they had an adult (a parent of one of the teenagers) with them. According to Johnson, after the third incident with defendant, the group of boys stopped playing at the church field because the church acquired a new pastor, who did not want them playing there.
Adonis Young, another high school football player who played on the church field with Winther and their friends, testified at trial that on one occasion when he was playing football, defendant approached them and told them they were trespassing. Young saw defendant's vehicle, which was "pitch black" and had the "darkest windows" he had ever seen. Young also saw a light inside of the vehicle. Based on this observation, Young believed that defendant was a police officer. Winther told defendant he was not a cop, but defendant said he was. When Winther started asking questions, defendant flashed "this badge in his face, saying, [l]ook at this." According to Young, defendant came by the field about three times when they were playing football.
Barbara Muller, defendant's wife, testified at trial that she was the clerk for Pearl Acres Baptist Church. Defendant was a trustee and the assistant treasurer for the church. At one point, both she and defendant were private investigators. In 2007, upon the death of their sponsor, their private investigator licenses became inactive. However, defendant began working for someone else, and his license was reactivated until November 15, 2008, when it expired. On Wednesday, April 16, 2008, Mrs. Muller was with defendant when he drove the Crown Victoria to church to attend services. They saw the boys playing football on the field. Defendant approached the boys. He told them that services were about to begin and that they needed to leave. She did not hear defendant tell them he was a police officer or that he would arrest them.

ASSIGNMENT OF ERROR NO. 1
In his first assignment of error, defendant argues that he was denied his constitutional right to present a defense when the trial court ruled that the testimony of Barbara Muller about what she heard defendant tell the group of teenage boys constituted impermissible hearsay. Specifically, defendant contends that the words he spoke to the boys were the "res gestae of the offense" and, therefore, were admissible.
During defendant's presentation of evidence, Mrs. Muller testified that on Wednesday, April 16, 2008, when she and the defendant drove to church, they saw the group of boys on the field. The following relevant colloquy took place between defense counsel and Mrs. Muller:
Q. As you approached the church, what did you all see?
A. Children playing on the field.
Q. What happened?
A. My husband approached them to let them know that services were about to begin. That they needed to leave.
Q. Approximately what time was this?
A. Choir practices start at six. So it had to be between five p.m. and six p.m. that evening.
Q. Now, did you hear your husband claiming to be a police officer at any time?
A. No, sir, I did not.
Q. Did you hear him telling anybody that he was going to personally arrest them?
A. No, sir, I did not.
Q. What did you hear him say?
At this point, the prosecutor lodged an objection to hearsay, which the trial court sustained. The parties approached the bench, and an extensive discussion was held. Defense counsel argued that the testimony of Mrs. Muller about what she heard defendant say was not being offered for the truth of the matter asserted and was, therefore, not hearsay. The prosecutor countered that Mrs. Muller's testimony would clearly be offered for the truth of the matter asserted and was, therefore, inadmissible hearsay. The trial court again sustained the prosecutor's objection to hearsay.
Defendant contends in his brief that the words which had been spoken by him were the "res gestae" of the offense, making them admissible under LSA-C.E. art. 801D(4).[2] We find it unnecessary to determine if Mrs. Muller's undeveloped testimony of what she heard defendant tell the teenagers did or did not constitute hearsay. When the trial court sustained the objection to hearsay the second time, defense counsel proffered Mrs. Muller's testimony:
Q. Ma'am, what words did he say when he approached the kids?
A. He told them that they had to leave because we were getting ready to have church. And that nobody could be on the field.
Defense counsel then noted, "She already testified to that any [sic] without objection. Okay." Thus, Mrs. Muller's testimony of what defendant said, which had been disallowed by the trial court via the prosecutor's hearsay objection, had only moments before been offered into evidence by way of testimony without objection.[3] Accordingly, the issue of whether or not defendant's words constituted things said or done under LSA-C.E. art. 801D(4) is moot.[4]
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
In his second assignment of error, defendant argues that the evidence was insufficient to support the conviction of false personation of a peace officer. Specifically, defendant contends the state did not establish that he committed any acts in violation of LSA-R.S. 14:112.1 on the date specified in the bill of information.
A conviction based on insufficient evidence cannot stand as it violates due process. See U.S. Const. amend. XIV; LSA-Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether or not, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See also LSA-C.Cr.P. art. 821B; State v. Ordodi, 06-0207, p. 10 (La. 11/29/06), 946 So.2d 654, 660; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, LSA-R.S. 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. State v. Patorno, 01-2585, pp. 4-5 (La.App. 1 Cir. 6/21/02), 822 So.2d 141, 144.
At all pertinent times herein, LSA-R.S. 14:112.1 provided, in relevant part:
A. False personation of a peace officer is the performance of any one or more of the following acts with the intent to injure or defraud or to obtain or secure any special privilege or advantage:
(1) Impersonating any peace officer or assuming, without authority, any uniform or badge by which a peace officer is lawfully distinguished.
(2) Performing any act purporting to be official in such assumed character.[5]
The bill of information indicates the date of the offense was April 16, 2008, a Wednesday. Johnson testified that they played football at the church field only on Sundays. Young testified that they played football only on the weekends, and that he would not have been at the church field on Wednesday, April 16. According to defendant, while these witnesses testified that defendant indicated that he was a police officer, their testimony did not establish that this alleged offense occurred on April 16, 2008.
Winther testified that in his written police statement, he indicated the third time defendant confronted him and his friends was on April 16. He testified on direct examination that, on that date, defendant drove up and asked who was in charge. When Winther replied that no one was in charge, defendant stated, "Well, you want me to arrest you and your friends. You know this is trespassing." On redirect examination, Winther was asked what were the words that defendant used. Winther replied, "He said, Do you want me to arrest you and your friends. It's on my statement."
Defendant clearly suggested that he had arrest powers during this incident. Further, contrary to defendant's assertion, we are not confined to this single incident on April 16, 2008, in determining whether or not the evidence was sufficient to convict. Louisiana Code of Criminal Procedure article 468 provides, in pertinent part:
The date or time of the commission of the offense need not be alleged in the indictment, unless the date or time is essential to the offense.
If the date or time is not essential to the offense, an indictment shall not be held insufficient if it does not state the proper date or time, or if it states the offense to have been committed on a day subsequent to the finding of the indictment, or on an impossible day.
The date on which false personation of a peace officer occurs is not an essential element of the offense. Thus, the state is not restricted in its evidence to the date set out in the indictment. It is limited in its proof to the facts recited in the bill of particulars. State v. Creel, 540 So.2d 511, 513 (La.App. 1 Cir.), writ denied, 546 So.2d 169 (La. 1989).
Defendant possessed enough information to identify the acts of the criminal offense and defend against them. See State v. Cramer, 358 So.2d 1277, 1278-79 (La. 1978); Creel, 540 So.2d at 513. Defendant filed a motion for a bill of particulars and was granted open file discovery by the state. The motion for a bill of particulars was satisfied by the state opening its file to the defense. See Creel, 540 So.2d at 513. There was no contention by defendant at any time before or during the trial that he was either surprised or prejudiced by the date of the offense listed in the bill of information. See State v. Hernandez, 410 So.2d 1381, 1386 (La. 1982). It was clear before the first witness was called at trial that defendant knew about more than one incident involving a confrontation with the teenagers. At the hearing on the motion to suppress evidence, Detective Mire testified that after the incidents were reported, he went to defendant's house to speak to him. He Mirandized defendant and engaged in a discussion with him. Regarding that discussion, Detective Mire testified as follows:
Talked to him for several minutes. Just discussing things with him. Just in reference to the incident. I asked him about if he was familiar with an incident that had occurred at the Pearl River Baptist Church off of North Pearl Street, with juveniles playing football. And he actually shrugged his shoulders and laughed and said, Which one? I advised him there was about three separate incidents that was reported.
Thus, given the witness testimony that established that defendant drove around in a Crown Victoria Police Interceptor with dark tinted windows, a white strobe light on the dash, a spotlight, a siren, and push bumpers; that defendant informed the teenage boys that he was a police officer and threatened to arrest them; and that he showed his detective badge when asked for proof of his identity as a police officer, there was ample evidence to establish the elements of the crime of false personation of a peace officer.
The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a factfinder's determination of guilt. State v. Taylor, 97-2261, pp. 5-6 (La.App. 1 Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. See State v. Mitchell, 99-3342, p. 8 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence which conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La.App. 1 Cir. 1985).
After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the state, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that defendant was guilty of the crime of false personation of a peace officer.
The assignment of error is without merit.
CONVICTION AND SENTENCE AFFIRMED.
NOTES
[1] In April of 2008, Pastor Bob left the church and was replaced by Pastor Bill Tiddle. According to the trial testimony of Barbara Muller, defendant's wife and Pearl Acres Baptist Church clerk, Mrs. Muller did not know who Pastor Bob spoke with regarding permission to play on the field.
[2] Article 801 D(4) provides:

Things said or done. The statements are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events, and which are necessary incidents of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction.
[3] As noted above, Mrs. Muller testified, "My husband approached them to let them know that services were about to begin. That they needed to leave."
[4] We note defense counsel admitted as much when asked by the trial court if that was the extent of his proffer: "I guess it is. But it all came in without objection any way. Maybe we have been running in circles."
[5] The statute was amended in 2009, but the amendment is not applicable herein. See La. Acts 2009, No. 157, § 1.