HIGGINBOTHAM, J.
*1028 The defendant, Melba Irvin, was charged by bill of information with four offenses: (Count 1) monetary instrument abuse, a violation of La. R.S. 14:72.2 ; (Count 2) bank fraud, a violation of La. R.S. 14:71.1 ; (Count 3) forgery, a violation of La. R.S. 14:72 ; and (Count 4) theft of the assets of a person who is aged, valued at $1,500.00 or more, a violation of La. R.S. 14:67.21 (prior to repeal by 2017 La. Acts, No. 281, § 3). Counts 1 and 3 were subsequently nol-prossed by the State. The defendant entered a plea of not guilty to the remaining two counts and, following a jury trial, was found not guilty on count 2 and guilty as charged on count 4. The defendant filed a motion for new trial, which was denied, and then she was sentenced to five years at hard labor. The district court suspended the sentence and ordered the defendant to serve five years on supervised probation and to pay a $1,000.00 fine, court costs, fees, and $31,650.00 in restitution.[1] The defendant now appeals, challenging the sufficiency of the evidence presented by the State.
FACTS
In March 2015, Ascension Parish Sheriff's Office Detective Charles Naquin spoke with Nellie LeBlanc, the victim, who was in her late eighties and who informed him that the defendant had written multiple checks from the victim's account, most without her approval, in 2014 during the months of July through October. The victim informed the detective that she initially loaned money to the defendant to cover nursing home expenses incurred by the defendant's mother, who was the victim's best friend. The initial loan was in the amount of $4,100.00 and included a check for $2,500.00 dated July 14, 2014, and a check for $1,600.00 dated July 21, 2014, both withdrawn from the victim's Capital One Bank checking account. Checks in the amounts of $2,800.00, $7,850.00, $4,200.00, and $7,650.00 were also withdrawn from the victim's Capital One Bank account. The victim had another checking account with Regions Bank, and checks in the amounts of $3,500.00, $5,500.00, and $2,000.00 were withdrawn from that account. A cash withdrawal of $950.00 was also drawn from the Regions Bank account on December 31, 2014. According to the detective, the victim only recalled approving the first two checks, which she considered the amount loaned. She did not recall writing or signing any other checks, which totaled $34,450.00.
Detective Naquin continued his investigation by interviewing the defendant on June 3, 2015, and June 29, 2015. The defendant explained that all of the checks were part of a loan from the victim. She claimed that the victim had trouble filling out checks properly, so the defendant filled out the checks and the victim signed them. The defendant would drive to the victim's house, and the victim would come outside, sit inside of the defendant's vehicle, and sign the checks. According to the defendant, the victim did not want any family members to know about their arrangement. The detective testified that the defendant had several explanations for the *1029 $950.00 withdrawal from Regions Bank. At one point, the defendant claimed that the cash was used to pay for her mother's caretakers. She also claimed that the cash was payment for items that she sold to the victim, including a generator. The actual withdrawal slip stated that the withdrawal was for "home repairs." At the conclusion of the detective's investigation, the defendant was placed under arrest.
SUFFICIENCY OF THE EVIDENCE
In her sole assignment of error, the defendant argues that the evidence presented by the State was insufficient. Specifically, the defendant contends that the State failed to prove that her conduct involved the use or attempted use of a fraudulent scheme. According to the defendant, the victim voluntarily loaned all of the money withdrawn from her accounts. In support of this contention, the defendant claims that the victim's signature appears on each of the nine checks in question; the defendant made reimbursement payments; and days before trial, the victim acknowledged that she met the defendant to give her more checks than the two initial checks.
A conviction based on insufficient evidence cannot stand as it violates Due Process. See U.S. Const. amend. XIV ; La. Const. art. I, § 2. The standard of review for the sufficiency of the evidence to uphold a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). See La. Code Crim. P. art. 821(B) ; State v. Ordodi, 2006-0207 (La. 11/29/06), 946 So.2d 654, 660 ; State v. Mussall, 523 So.2d 1305, 1308-09 (La. 1988). The Jackson standard of review, incorporated in Article 821, is an objective standard for testing the overall evidence, both direct and circumstantial, for reasonable doubt. When analyzing circumstantial evidence, Louisiana Revised Statute 15:438 provides that the factfinder must be satisfied the overall evidence excludes every reasonable hypothesis of innocence. See State v. Patorno, 2001-2585 (La. App. 1st Cir. 6/21/02), 822 So.2d 141, 144.
At the time of the offense, Louisiana Revised Statute 14:67.21(B)(3) provided that theft of the assets of a person who is aged is the "intentional use, consumption, conversion, management, or appropriation of the funds, assets, or property of a person who is aged ... through the execution or attempted execution of a fraudulent or deceitful scheme designed to benefit a person other than the person who is aged[.]" The statute defined a "[p]erson who is aged" as any person sixty years of age or older. La. R.S. 14:67.21(A)(2). Theft is a specific intent crime. See State v. Odom, 2002-2698 (La. App. 1st Cir. 6/27/03), 861 So.2d 187, 195, writ denied, 2003-2142 (La. 10/17/03), 855 So.2d 765. Specific criminal intent is "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." La. R.S. 14:10(1). Specific intent may be inferred from the circumstances of a transaction and from the actions of the accused. Further, specific intent is an ultimate legal conclusion to be resolved by the fact finder. State v. Henderson , 99-1945 (La. App. 1st Cir. 6/23/00), 762 So.2d 747, 751, writ denied, 2000-2223 (La. 6/15/01), 793 So.2d 1235.
Detective Naquin spoke with the victim a second time, one week prior to trial. At that time, the victim stated that she "had given some of [the other checks]" to the defendant. However, the detective also testified that when the victim made that statement, "she seemed a little confused *1030 at the time." The detective further explained that the victim "seemed to be having trouble remembering specific things and conveying ideas" and that she was unable to "clearly recall all of the events surrounding the whole case."[2]
The victim, who was ninety-one years old at the time of trial, testified that she loaned money to the defendant in order to help with the release of the defendant's mother, who was the victim's best friend, from a nursing home. She testified that she lent $800.00 to the defendant. The victim recalled reporting to detectives that she also gave checks for $2,500.00 and $1,600.00 to the defendant. The victim did not recall giving any other checks to the defendant or giving the defendant permission to withdraw money from her account. She acknowledged that her name was written in the signature lines of the checks, but stated that she did not remember signing the checks and that the signatures were not in her handwriting. The victim further testified that it was not her intent to loan such a substantial amount of money to the defendant. According to the victim, the defendant reimbursed her in the amount of $400.00 or probably "a little more than that," but that she was unsure of the total amount because when she returned from a hospital stay, she was unable to find the tablet on which she was recording the payments as the defendant gave them to her.
The victim's daughter, Monique LeBlanc, testified that she lives with the victim and knows the defendant. LeBlanc testified that she overheard the defendant tell the victim that the defendant was borrowing money, she just did not tell the victim that she was taking it from the victim's account. LeBlanc also testified that the defendant told her that she did not take as much money as was reported.
Laura Patureau testified that the victim contacted her in 2014 and stated she was having financial problems with the defendant. According to Patureau's testimony, the victim was aware of four checks written to the defendant, but not any others. The victim also told her that the defendant had reimbursed her $800.00. Patureau testified that she spoke to the defendant and that the defendant admitted to her that she withdrew approximately $40,000.00 from the victim's account.
The defendant testified that she "borrowed" $34,450.00 dollars from the victim between July 2014 and October 2014, but that she reimbursed the victim $11,000.00. The defendant agreed that she owed the victim $23,450.00. According to her testimony, she first asked the victim for a loan in order to get her mother out of a nursing home and to pay an attorney for her mother's interdiction proceeding. The defendant also testified that she needed money to pay sitters for her mother and to maintain two households, hers and that of her mother. The defendant explained that she was selling land and planned to reimburse the victim out of the proceeds from the sale of her property. After she received $32,000.00 from the sale of her property, she reimbursed the victim $8,000.00.
The defendant's son, Adam Irvin, testified that he signed a "receipt" showing that his mother paid the $8,000.00 to the victim on January 16, 2015, as well as three other payments, for a total of $11,000.00. However, Irvin testified that he only witnessed the $8,000.00 payment and one of the "other" payments, which was for $600.00. The receipt also bears the victim's name and that of Melanie Darville, who is *1031 a cousin of the defendant's son. Darville did not testify at trial.
The defendant acknowledged that when she spoke to Detective Naquin about this case prior to trial, she did not remember if she mentioned the receipt. Explaining the $950.00 withdrawal from Regions Bank, the defendant testified that the withdrawal was payment for a generator that she sold to the victim. The defendant confirmed that in 2016, she purchased a new Cadillac SUV, but claimed that she did not use any funds from the victim for the purchase. At the conclusion of her testimony, the defendant explained that she did not participate in the District Attorney Probation Program because she disagreed with her probation officer about the amount of restitution owed. The defendant's former probation officer, Jody Simmons, confirmed that in order for the defendant to participate in the District Attorney Probation Program, she had to agree to the amount of restitution. According to Simmons, the defendant did not present any documentation confirming that she paid $ 11,000.00 to the victim, and the victim told Simmons that she had not received any reimbursement.
The jury heard the testimony and viewed the evidence, and notwithstanding any inconsistencies, found the defendant guilty on count four. The trier of fact is free to accept or reject, in whole or in part, the testimony of any witness. Moreover, when there is conflicting testimony about factual matters, the resolution of which depends upon a determination of the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. The trier of fact's determination of the weight to be given evidence is not subject to appellate review. An appellate court will not reweigh the evidence to overturn a fact finder's determination of guilt. State v. Taylor, 97-2261 (La. App. 1st Cir. 9/25/98), 721 So.2d 929, 932. We are constitutionally precluded from acting as a "thirteenth juror" in assessing what weight to give evidence in criminal cases. State v. Mitchell, 99-3342 (La. 10/17/00), 772 So.2d 78, 83. The fact that the record contains evidence that conflicts with the testimony accepted by a trier of fact does not render the evidence accepted by the trier of fact insufficient. State v. Quinn, 479 So.2d 592, 596 (La. App. 1st Cir. 1985).
When a case involves circumstantial evidence and the jury reasonably rejects the hypothesis of innocence presented by the defendant's own testimony, that hypothesis falls, and the defendant is guilty unless there is another hypothesis which raises a reasonable doubt. State v. Captville, 448 So.2d 676, 680 (La. 1984). The defendant maintains that there was no theft because the victim loaned the money to her. The verdict returned in this case indicates that the jury rejected the defendant's theory of innocence. The evidence was sufficient to establish the "intentional use, consumption, conversion, management, or appropriation of the funds, assets, or property of a person who is aged ... through the execution or attempted execution of a fraudulent or deceitful scheme designed to benefit a person other than the person who is aged" as to count four. See La. R.S. 14:67.21(B)(3). The guilty verdict reflects the reasonable conclusion that the defendant cashed checks from the victim's accounts by means of fraudulent conduct and, in using that money for her personal benefit, deprived the victim of her money. After a thorough review of the record, we find that the evidence supports the jury's verdict. We are convinced that viewing the evidence in the light most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis of innocence, that the defendant was *1032 guilty of theft of the assets of a person who is aged.
This assignment of error is without merit.
CONCLUSION
For the stated reasons, we find the evidence is sufficient to support the jury's verdict of guilty as to Count 4. Thus, we affirm the defendant's conviction and sentence.
CONVICTION AND SENTENCE AFFIRMED.

The amount of restitution was set after a hearing.

Testimony established that the victim suffered a stroke after the incident and her initial meeting with Detective Naquin, but prior to trial, and was "[s]till having problems" at the time of trial.